2023 IL App (1st) 220317-U

No. 1-22-0317

December 29, 2023

SECOND DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 5372 |
| | ) | |
| CRISTOL WILSON, | ) | Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The trial court did not abuse its discretion when it denied defendant's motion *in limine* to bar the admission of a portion of his electronically recorded interview.

¶ 2    Following a jury trial, defendant Cristol Wilson was found guilty of two counts of predatory criminal sexual assault of a child, two counts of criminal sexual assault, one count of

aggravated battery, and one count of aggravated criminal sexual abuse.[1] He was sentenced to consecutive prison terms of seven years for each count of predatory criminal sexual assault, four years for each count of criminal sexual assault, and three years for aggravated criminal sexual abuse. The trial court also imposed a concurrent two-year sentence for aggravated battery. On appeal, defendant contends that the trial court erred when it denied his motion *in limine* to bar the admission of a portion of his electronically recorded interview (ERI), resulting in the admission of "highly prejudicial" evidence of another offense. We affirm.

¶ 3    Defendant was charged by a 13-count indictment with multiple offenses against his daughter, K.W., arising from incidents between December 28, 2010, and December 31, 2017, in Cook County. In 2021, the State proceeded on three counts of predatory criminal sexual assault of a child, three counts of criminal sexual assault, one count of aggravated battery, and one count of aggravated criminal sexual abuse. The counts alleged that defendant committed various sex acts against K.W., but did not allege that he touched her with his penis.

¶ 4    Prior to trial, the defense filed a motion *in limine* seeking, relevant here, to bar the State from introducing a portion of defendant's ERI in which he denied that he " 'pulled [his] penis out' " because those statements referred to an incident that allegedly occurred in Indiana.

¶ 5    At a hearing on the motion, the State argued that, although K.W. stated in her "victim interview statement" that an "incident" involving defendant's penis occurred in Indiana, Indiana was never mentioned in defendant's ERI. The State further asserted that the interviewing detective questioned defendant about "any and all" sex offenses that he "may or may not have committed,"

---

[1] Defendant's first name is also spelled Crystal in the record. We adopt the spelling from the notice of appeal.

and that the allegation that defendant pulled out his penis was "intrinsically intertwined" with defendant's actions of "committing sex acts on [K.W.] for a period of five to six years." Therefore, according to the State, a motion to admit proof of other crimes was unnecessary and the trial court must instead determine whether the complained-of evidence was relevant. The State further asserted this evidence was relevant because, in the ERI, defendant's demeanor when asked if he used his penis and "the determination in his voice" when he denied it was "extremely probative." The State noted the contrast to defendant's "softer" and "more careful" demeanor when asked if he used his mouth on K.W.'s vagina, and that he answered "possibly."

¶ 6 Trial counsel responded that defendant was not charged with contact between his penis and K.W. Further, the only evidence of such contact was alleged to have occurred in Indiana and was "exceptionally prejudicial." Counsel further argued that the State could have moved to admit other-crimes evidence, but did not. The State then argued that K.W. stated that it "might have happened in Indiana," but was not "sure that that [was] exactly what happened."

¶ 7 The trial court then asked the State whether Indiana "came into play" during the ERI, and the State answered no. The court denied the defense's motion, as the statement about defendant's penis occurred in the context of an "ongoing" and "continuing" allegation of abuse. According to the court, this conduct was "inextricably intertwined" with the charged offenses or part of a "continuing course of conduct" and, therefore, the general principles of relevance applied. The court determined that the trier of fact would require "for purposes of context the pattern or alleged pattern" of defendant's "course of conduct" toward K.W.

¶ 8    At trial, K.W. testified that she was born on December 28, 2001, and was 19 years old. K.W. identified defendant in court as her father. During her childhood, K.W. never saw defendant drink alcohol, take drugs, or be under the influence of alcohol or drugs.

¶ 9    Between 2013 and 2016, when K.W. was between 11 and 14 years old, she lived in the 1300 block of West 112th Place in Chicago. During this time defendant repeatedly entered her bedroom at night. The last incident occurred when she was 15 years old, prior to eighth grade graduation. When defendant entered, K.W. pretended to be asleep. Defendant called her name and she did not answer, hoping he would "go away." However, defendant moved her onto her back, lowered her pants and underwear, and put his fingers "between the line of her vagina" and then past that line for about 10 minutes. Defendant then replaced her clothing and left. On another occasion, defendant used his fingers and pressed his penis against her vagina.

¶ 10    When K.W. lived at the 112th Place house and was between the ages of 11 and 14, these incidents occurred about twice a week. When she was 11 years old, defendant came to her room at night, checked if she was awake, and then touched her body inappropriately. K.W. testified that at different "times" defendant used his fingers and his mouth. She also remembered "the time" he pressed his penis against her vagina. Defendant rubbed her vagina with his fingers, placed his mouth on her vagina, and inserted his tongue into her vagina. Defendant placed his mouth on her vagina more than once. Defendant would also raise her shirt, put his mouth on her breasts, and lick her breasts for several minutes.

¶ 11    K.W. then testified that these incidents happened about seven times when she lived at 112th Place from the age of 13 to 15. When she was 11 years old and 12 years old, the incidents happened once a week. When she was 13 and 14, they happened twice a week. K.W. then testified that on

two occasions in the home where she lived prior to living on 112th Place, defendant "tuck[ed]" her in and rubbed his fingers against her vagina through her clothes.

¶ 12    On one occasion, when K.W. lived at 112th Place and she was between 13 and 14 years old, she was across the street with a male cousin and another boy when defendant yelled for her to come home. She ignored him. Defendant approached, grabbed the back of her shirt, and dragged her home. In the front yard, defendant bent her backward and said he would "break [her] f*** back." She ran inside and closed the door, but defendant entered and they argued. Defendant then placed both hands around her neck and choked her. She could not breath and felt defendant's nails "digging" into her neck. K.W.'s sister, Jasmine Dembry, pushed defendant off K.W., who had a scar on her neck as result of this incident. At trial, K.W. pointed to the scar.

¶ 13    Around December 25, 28, and 29, 2016, K.W. and defendant conversed through "Facebook Messenger." K.W. identified a printout of the conversation, which the State moved to enter into evidence. The trial court allowed it and published it to the jury over the defense's objection. The messages were then read into the record. This printout is included in the record on appeal and this court has reviewed it.

¶ 14    In the messages, relevant here, K.W. stated that defendant choked her "almost to death" and that she "wish[ed]" that someone had walked in when defendant "snuck" into her room and touched her. When K.W. asked if defendant knew what he did to her, he responded that he deserved "everything that's coming" and "yes." Defendant later stated that he did not remember "[s]neaking" into K.W.'s room, but that she would not "say it if it wasn't true," and that he was sorry.

¶ 15    K.W. then testified that on March 1, 2018, when she was a sophomore in high school, she had a "nervous breakdown." She went to the office of her counselor, Karen Freeman, and stated that she was "sexually assaulted by [her] father." K.W. then spoke to someone at the Child Advocacy Center (CAC). She never told her mother or her siblings and never pushed defendant away because she was afraid of him and did not want to get hurt.

¶ 16    During cross-examination, K.W. testified that she did not remember where she lived during fourth grade, but from fifth to eighth grade, she lived at 112th Place. In eighth grade, she moved. During redirect, K.W. testified that she had a birthday during the school year. In seventh grade, for example, she was 12 years old and then turned 13.

¶ 17    Dembry testified that she did not remember defendant acting as though he was under the influence of alcohol or drugs when the family lived at 112th Place. One evening in November 2015, when K.W. was 13 years old, Dembry heard K.W. screaming and observed defendant dragging K.W. into the house by the neck. Then, defendant stood over K.W. and applied "force" to her neck with both hands and choked her. Defendant yelled that K.W. should not "be outside with a boy" and was "acting too fast." Dembry pushed defendant off K.W.

¶ 18    Freeman testified that she was a social worker at K.W.'s school. On the morning of March 1, 2018, the school nurse related that K.W. expressed suicidal thoughts. Freeman asked K.W., who was crying, to come to her office. After their conversation, Freeman called the Department of Children and Family Services to report suspected sexual abuse of K.W. by her father.

¶ 19    Chicago police detective Moreen Hanrahan testified that she coordinated a forensic interview of K.W., which was conducted at CAC on March 12, 2018. A second interview was held on March 19, 2018. Hanrahan attended both interviews. Thereafter, she interviewed K.W. to obtain

"Facebook information." Hanrahan obtained search warrants and received, relevant here, chats and messages, as well as the matching usernames and certificates of authenticity for K.W.'s and defendant's Facebook accounts.

¶ 20    After defendant was arrested, Hanrahan learned that his birthdate was August 21, 1974. Hanrahan and her partner then met with defendant. After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant agreed to speak to her. Hanrahan learned from defendant that K.W. was "straightforward," would not lie about the allegations, and if "she said that it happened, that it happened." He also stated that he drank and used drugs "back then," so he did not remember "a lot." Defendant related an incident when he closed a window in K.W.'s bedroom, covered her with a blanket, touched her breast, put his arm around her waist, and fell asleep with her. The interview was recorded.

¶ 21    Over the defense's objection, the trial court granted the State's request to enter the ERI into evidence and publish the ERI and its transcript. The State then played the video. The ERI and transcript are included in the record, and this court has reviewed them.[2]

¶ 22    In the ERI, defendant stated, relevant here, that his wife told him that K.W. said "something about" him performing oral sex on K.W. Defendant asserted that he told K.W. during a "brief conversation" that he did not remember "anything like that," but that he was not accusing her of "making something up." He remembered checking on K.W. nightly and having a "pretty violent" fight over a boy. When Hanrahan asked whether defendant was "saying that it happened" but that

---

[2] The ERI contains approximately one hour and three minutes of footage. The sound and picture stop at certain points and at other points, the footage accelerates. There are also moments of crosstalk or where the conversation is inaudible. At the 54-minute mark, the recording stops entirely. However, these difficulties did not affect this court's ability to view the section of the ERI now at issue.

he did not remember, he responded that if he did not remember, "how can I say it happened." He described K.W. as "straightforward." Defendant next stated that "[b]ack then" he carried a "sandwich bag of drugs" and that it was "possible that it happened" as "a lot of those days were very blurry."

¶ 23    Defendant later stated that he remembered one instance where he entered K.W.'s room due to an open window, and that he "did do it" because he remembered waking up on the floor. Hanrahan asked whether defendant touched K.W. with his hand, mouth, or penis. Defendant responded, "My penis? Hold on now. Not my penis." He then stated that he touched K.W.'s breast, laid next to her, and "[p]ossibly" touched her vagina, but did not remember. Defendant next stated that he "vaguely" remembered "that one night." When Hanrahan asked if defendant performed oral sex on K.W., he stated that he did not know, but it "could *** have been that night." When Hanrahan asked whether defendant remembered placing his mouth on K.W.'s breast, he replied that "it had to happen that night." When Hanrahan asked defendant to tell her about a time that he put his mouth on K.W.'s breast and vagina, defendant responded that if he did "anything," it happened on the night that he closed the window because that was the only night he remembered entering K.W.'s room.

¶ 24    Hanrahan then stated that K.W. stated that "at one point *** [defendant] took [his] penis out." Defendant said "no" and shook his head. Hanrahan then asked if defendant remembered that "one time," and he replied, "No. I would never. Never. Never." Hanrahan again stated that K.W. said it "happened one time" and asked whether defendant remembered that he "pulled [his] penis out." Defendant said no several times, that he "would never," and "Hell no." Later, defendant stated that he "probably" touched K.W.'s breast if he was next to her in bed, but continued to deny

that he touched K.W.'s vagina. While there was a "possibility" that he touched K.W's breasts thinking that she was her mother, he did not remember putting his mouth on K.W.'s vagina.

¶ 25    The State moved to admit the Facebook documents and certifications into evidence, which the trial court granted over the defense's prior objections. The State also moved to admit K.W.'s birth certificate, which the trial court granted.

¶ 26    Following closing argument, the jury found defendant guilty of two counts of predatory criminal sexual assault, two counts of criminal sexual assault, one count of aggravated battery, and one count of aggravated criminal sexual abuse.[3] The jury found defendant not guilty of one count of predatory criminal sexual assault of a child and one count of criminal sexual assault.

¶ 27    Defendant filed a motion for a new trial. He then filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. He alleged, relevant here, that the trial court erred by admitting, in the absence of a motion to admit other-crimes evidence, the sections of defendant's ERI discussing contact between his penis and K.W. Following argument, the trial court denied defendant a new trial noting, *inter alia*, that a motion to admit other-crimes evidence was not warranted because the complained-of portions of the ERI were intrinsic evidence related to the facts and circumstances of the case.

¶ 28    The trial court sentenced defendant to consecutive prison terms of seven years for each count of predatory criminal sexual assault, four years for each count of criminal sexual assault, and three years for aggravated criminal sexual abuse. The court also imposed a concurrent two-

---

[3] Although neither party requested a limiting instruction regarding the ERI during the jury instruction conference, the jury was instructed that the transcript of the ERI only represented what the transcriber believed was said in the ERI and merely served as an aid. The jury was further instructed that the ERI, not the transcript, was the evidence.

year sentence for aggravated battery. Defendant filed a motion to reduce sentence, which the trial court denied.

¶ 29    On appeal, defendant contends that the trial court erred in admitting the portion of the ERI in which Hanrahan stated that K.W. stated that defendant "pulled" his penis out. Defendant argues that he was not charged with contact between his genitals and K.W., and that her "vague allegation" that he "pulled" out his penis at some unspecified time was highly prejudicial other-crimes evidence. He further argues that this portion of the ERI was inadmissible as intrinsic evidence, as other-crimes evidence, or to show his reaction to the allegation. Defendant concludes that this error was not harmless beyond a reasonable doubt and that the cause must therefore be remanded for a new trial.

¶ 30    Here, trial counsel raised this issue in pretrial and posttrial motions, as well as during trial. Therefore, the issue was properly preserved for appeal and harmless error analysis applies. See *People v. Herron*, 215 Ill. 2d 167, 175, 181-82 (2005). Accordingly, "the State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error." (Internal quotation marks omitted.) *Id*. at 181-82.

¶ 31    Generally, evidence of other crimes is inadmissible to demonstrate the propensity of a defendant to commit the charged crime. *People v. Manning*, 182 Ill. 2d 193, 213 (1998). However, "evidence of other offenses is admissible if it is relevant for any purpose other than to show the propensity to commit crime." *People v. Illgen*, 145 Ill. 2d 353, 365 (1991). Other-crimes evidence is admissible when relevant to establish *modus operandi*, intent, identity, motive, or absence of mistake. *Id*. at 364-65. Additionally, evidence of other crimes is admissible when it is "part of a continuing narrative of the event giving rise to the offense," is intertwined with the charged event,

or explains a part of the offense that would otherwise be implausible. *People v. Outlaw*, 388 Ill. App. 3d 1072, 1086-87 (2009). In other words, evidence of other crimes may be admissible to set the stage for an offense and explain circumstances about it that appeared improbable. *People v. Hale*, 2012 IL App (1st) 103537, ¶ 14. "Where such evidence is part of the course of conduct or a continuing narrative of the charged offense, ordinary principles of relevancy apply and the rules applicable to other-crimes evidence are not implicated." *People v. Saulsberry*, 2021 IL App (2d) 181027, ¶ 50.

¶ 32    A trial court's decision on a motion *in limine* will not be reversed by this court "absent a clear abuse of discretion." *People v. Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32. Moreover, the decision to admit evidence is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12. "An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the position adopted by the trial court." *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 84.

¶ 33    Here, defendant argues that the trial court improperly denied his motion *in limine* and admitted the complained-of portion of the ERI. He asserts that the trial court erroneously found this evidence to be intrinsic to the charged offenses and that the allegation that he took out his penis was not a part of, or preliminary to, the matters being tried.

¶ 34    This court has recognized that "[d]ifferent evidentiary rules apply regarding evidence of other crimes that are unrelated to the charged offenses" and other-crimes evidence that is a part of the charged offenses. *People v. Morales*, 2012 IL App (1st) 101911, ¶ 24. The distinction rests on whether the complained-of evidence is "*extrinsic* or *intrinsic* to the charged offenses." (Emphasis

in original.) *Id.*; see also *People v. Rutledge*, 409 Ill. App. 3d 22, 25 (2011) ("if the evidence of the other offenses and the evidence of the crime charged are inextricably intertwined, the rule relating to other crimes is not implicated and ordinary relevancy principles apply"). When a prior offense "is part of the 'course of conduct' leading up to the crime charged, then it constitutes intrinsic evidence of the charged offense and its admissibility is not analyzed as 'other crimes' evidence, requiring proof that the defendant committed or participated in the uncharged offense." *Morales*, 2012 IL App (1st) 101911, ¶ 25 (quoting *People v. Manuel*, 294 Ill. App. 3d 113, 124 (1997)).

¶ 35    *Manuel* is instructive. In that case, the defendant was charged with delivering cocaine after he arranged a sale to a police informant working with an undercover police officer. *Manuel*, 294 Ill. App. 3d at 116. Over the defendant's objection, the trial court admitted evidence that he had arranged prior drug sales with the same police informant. *Id.* at 116, 123. Following a jury trial, the defendant was found guilty of a narcotics offense.

¶ 36    On appeal, the defendant contended that the admission of drug sales prior to the one for which he was charged was improper because it constituted " 'other crimes' " evidence. *Id.* at 123. We disagreed, explaining that the complained-of evidence did not constitute " 'other crimes' " unrelated to the charged offense because the previous drug sales were precursors to the charged offense and provided context for certain aspects of the charged offense. *Id.* at 123-24. While the earlier drug sales were not part of the drug transaction for which the defendant was charged, the earlier sales "were a necessary preliminary to the current offense." *Id.* at 124. As such, the evidence of the previous drug sales was subject only to ordinary relevancy analysis. *Id.* Applying those principles, we held "the evidence was relevant to show [the defendant's] course of conduct and his illicit relationship" with the informant. *Id.*

¶ 37    Similarly, here, the trial court did not abuse its discretion in admitting the complained-of portion of the ERI based upon the court's determination that the exchange showed defendant's course of conduct toward K.W. and was an intrinsic part of the charged offenses. K.W.'s alleged statement that defendant "pulled" his penis out "at one point" was intertwined with the charged offenses involving his fingers and mouth. K.W. testified that prior to eighth grade graduation, defendant entered her room, lowered her pants and underwear, and inserted his fingers into her vagina for about 10 minutes. She testified to other incidents where defendant pressed his penis against her vagina, placed his mouth on her vagina, and put his mouth on her breasts in order to lick them. In other words, the allegation that defendant pulled out his penis was "intimately intertwined" with the charged acts that defendant committed against K.W. involving his fingers and mouth over the course of multiple years. See *Saulsberry*, 2021 IL App (2d) 181027, ¶ 50.

¶ 38    Moreover, considering that K.W. testified that defendant pressed his penis against her, the complained-of portion of the ERI discussing whether he pulled out his penis was relevant to the "continuing narrative" of defendant's commission of sexual acts against K.W. See *id.* ("Where such evidence is part of the course of conduct or a continuing narrative of the charged offense, ordinary principles of relevancy apply and the rules applicable to other-crimes evidence are not implicated."). Accordingly, as the complained-of portion of the ERI addressed defendant's course of conduct toward K.W., it was admissible pursuant to the ordinary principles of relevance. See *id.* The trial court therefore did not abuse its discretion in denying defendant's motion *in limine*. See *Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32.

¶ 39    Even if this court were to accept defendant's argument that the complained-of portion of the ERI was erroneously admitted other-crimes evidence, however, any error was harmless.

¶ 40 Our supreme court has established that even if the admission of other-crimes evidence was erroneous, to warrant reversal, "the evidence must have been a material factor in the defendant's conviction such that, without the evidence, the verdict likely would have been different." *People v. Hall*, 194 Ill. 2d 305, 339 (2000). In other words, the evidence must be so prejudicial that it denied the defendant a fair trial. *People v. Patterson*, 2013 IL App (4th) 120287, ¶ 59.

¶ 41 When considering whether an error was harmless, this court "may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008).

¶ 42 Based on our review of the record, the other properly admitted evidence "overwhelmingly supports" defendant's convictions. *Id.* Here, K.W. testified that prior to eighth grade graduation, defendant entered her room while she pretended to be asleep, moved her onto her back, lowered her pants and underwear, and inserted his fingers into her vagina for about 10 minutes. She further testified that defendant rubbed her vagina and placed his mouth on her vagina. She also testified that defendant placed his mouth on her breasts in order to lick them. The evidence further established, through K.W.'s and Dembry's testimony, that when K.W. was 13 years old, she ignored defendant's instructions to come home, and he responded by dragging her across the street, bending her backward, threatening to "break [her] f*** back," and choking her. Considering this evidence, the outcome of defendant's trial would not have been different absent the complained-of portion of the ERI. See *Hall*, 194 Ill. 2d at 339 (reversal is warranted when the erroneously admitted evidence was a "material factor in the defendant's conviction").

¶ 43    Accordingly, the trial court did not abuse its discretion it when denied defendant's motion *in limine*, and defendant's arguments on appeal fail.

¶ 44    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 45    Affirmed.