# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Morales*, 2012 IL App (1st) 101911

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISMAEL MORALES, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-1911 |
| Filed | February 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for murder and robbery arising from a fatal beating in a factory parking lot were upheld over his contentions that the trial court abused its discretion in admitting testimony about an earlier beating in the same lot and evidence of defendant's gang membership, and that the trial judge's comments to a prospective juror excused for having a bias against gangs deprived defendant of a fair trial under the plain error rule, since the earlier incident provided the context for the murder and robbery and was not introduced to prove defendant's propensity to commit viloent acts, the jury was instructed that the gang evidence was limited to providing a basis for defendant's identification and no abuse of discretion would be found where defendant did not offer a limiting instruction to cure the defects he cited in the instruction given, and in the absence of evidence that defendant did not receive a fair trial by an unbiased jury, no basis existed to find plain error in the trial judge's comments to the prospective juror. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-3180; the Hon. James B. Linn, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed; mittimus corrected. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, S. Amanda Ingram, and Heidi Linn Lambros, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Peter Fischer, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |

| | |
|---|---|
| Panel | JUSTICE GARCIA delivered the judgment of the court, with opinion. Justices Lampkin and Palmer concurred in the judgment and opinion. |

## OPINION

¶ 1    A jury convicted the defendant of murder and robbery after he and several codefendants beat to death a factory employee in the parking lot where the victim worked. During *voir dire*, the trial judge dismissed a prospective juror that expressed a bias against gangs, but told her that he might send her to the Daley Center for a civil trial that would last a month. At trial, the circuit court overruled the defendant's objection regarding evidence of an attack by some of the defendants that took place in the same parking lot approximately three weeks prior to the murder. The court also admitted evidence over the defendant's objection that he and the other assailants were members of a street gang, which the jury was instructed to consider for purposes of identification. We hold the circuit court did not abuse its discretion in either of its evidentiary rulings. We also hold that the trial court's comments to the self-admitted, biased prospective juror that she might have to serve on a month-long civil trial did not give rise to plain error. We affirm.

¶ 2                              BACKGROUND

¶ 3    The evidence adduced at trial proved the defendant and four others murdered the victim, Francisco Reyes, in the parking lot of a tortilla factory in Chicago on December 23, 2007. Along with the defendant, Carlos Lopez, Daniel Roman, Martin Roman, and Adolfo Zuniga were indicted for the murder. Two eyewitnesses saw the crime occur, Fernando Garcia and Sylvia Ortiz. Each lived in a building across the street from the tortilla factory and witnessed the crime from the window in their respective apartments, which faced the parking lot. Both witnesses testified they knew the defendant from their neighborhood and had seen him periodically over a period of four to five years. According to Garcia and Ortiz, the defendant's uncle also lived in their building.

¶ 4        According to the prosecution's theory, the events leading up to the murder began on December 4, 2007. Sometime around 2 a.m., Garcia heard a commotion outside. He looked out his window and saw two or three individuals that he could not recognize selling something in the parking lot of the tortilla factory. As he continued to watch, several men attacked the individuals in the parking lot. Factory workers testified that one individual ran into the tortilla factory seeking refuge from the attack. The man was covered in blood. After the factory workers allowed the victim to enter the factory, the factory doors were secured. One of the factory workers testified that he heard pounding on the factory door. Meanwhile, Garcia continued to watch as the group of men smashed the windows of a car in the lot with rocks and stomp on its roof. On direct examination, Garcia testified that the defendant was part of this group, along with the defendant's cousins, Daniel and Martin Roman, and Carlos Lopez . On cross-examination, Garcia admitted he "could not be sure" that the defendant was there that night. Ortiz also saw the attack by the group of men and the damage they caused to the car from her apartment window. She gave a similar account of the incident, but testified she only recognized Daniel and Martin Roman as part of that group. Ortiz testified that she heard Martin shouting at someone in the factory to come out.

¶ 5        Approximately three weeks later, on the night of the murder, Ortiz and Garcia were both at home in their respective apartments when they heard a voice outside around midnight. They each recognized the person speaking as Daniel Roman; he was talking on a cell phone. Ortiz could not hear what Daniel was saying, but Garcia heard him ask for help in beating up someone. Soon after, the defendant, his brother, Omar Morales (a juvenile), Martin Roman, and Carlos Lopez arrived and approached Daniel. Garcia testified that he recognized all of them from the neighborhood. Ortiz testified that all of the men were familiar to her because they grew up in the same neighborhood. Garcia stated that he frequently saw them near his home flashing gang signs and yelling at passing cars. Garcia believed the defendant and Daniel Roman were members of a street gang.

¶ 6        After the men gathered, Garcia heard someone say "Let's go beat him up" several times. The group walked to the tortilla factory parking lot where the victim was driving a forklift. His supervisor at the factory testified that he had sent the victim out to the parking lot shortly before the murder to unload a shipment of corn. The group grabbed the driver off the seat of the forklift and began hitting and kicking him and soon forced him to the ground. At some point, Adolfo Zuniga arrived in a car and joined the others in beating the victim. As the victim lay on the ground, one of the men removed the victim's wallet from his pocket. Ortiz heard someone comment about how little money the victim had.

¶ 7        After the wallet was taken, one of the men picked up a concrete rock from across the street. He then dropped the rock directly on the victim's head. Another one of the attackers dropped the rock on the victim's head a second time. Garcia testified that Martin Roman dropped the rock on the victim the first time; Garcia could not tell who dropped the rock the second time. Ortiz did not know who dropped the rock on the victim either time. After striking the victim with the rock the second time, the men scattered.

¶ 8        Inside the factory, the supervisor asked Juan Ramirez, a coworker, to check on the forklift driver when he failed to return from unloading the corn. Ramirez found the victim lying on his back on the pavement of the parking lot. He ran back inside the factory to call

911. The victim died of multiple cranial injuries caused by blunt force trauma.

¶ 9    Detectives Roberto Garcia and Peter Maderer investigated the murder. Four days after the murder, on December 27, eyewitness Fernando Garcia approached Detective Garcia and told him what he saw the night of the murder. He testified that he did not come forward right away because he feared retribution, particularly because the defendant's uncle lived in his building. Garcia identified photos of the defendant, Omar Morales, Carlos Lopez, Daniel Roman, Martin Roman, and Adolfo Zuniga as the perpetrators. Garcia also viewed two in-person lineups. At the first, he identified Omar. At the second, he identified the defendant, Daniel, Martin, Lopez, and Zuniga.

¶ 10    Ortiz spoke to Detective Garcia at the police station on January 1, 2008. Like Garcia, she testified that she did not come forward right away because she was afraid. From photos, she identified the defendant, Daniel, and Martin. She later viewed three in-person lineups. At the first, she identified Omar. At the second, she identified the defendant, Daniel, and Martin. At the third lineup, Ortiz identified Lopez.

¶ 11    The defendant and the other perpetrators, except for juvenile Omar, were indicted and charged with three counts of murder and one count of robbery. Omar Morales was charged in juvenile court. The defendant was tried separately. At the beginning of *voir dire*, the court informed the prospective jurors that the trial could involve gang evidence and asked whether anyone in the venire had a problem hearing such a case. Three jurors raised their hands; the following exchange took place.

"THE COURT: Who is the woman that says she's prejudice? Get the name of this person here that says she's prejudice[d] and can't give a fair trial before she even hears the evidence. What's your name?

A. Pamela Russell

THE DEPUTY SHERIFF: Pamela Russell, Judge.

THE COURT: Pamela Russell says she's prejudice[d]. And there is the gentleman next to her also says he's prejudice[d].

I mean, we're talking about before you even hear the evidence yet and you don't even know how this may come up, what context, if any.

Who is the other person?

THE DEPUTY SHERIFF: Minna Pirogovsky and Edwin Rivera.

THE COURT: Okay. I may have to send you down to the Daley Center to listen to a medical malpractice case. It may take a month.

What's the problem about there, sheriff?

THE DEPUTY SHERIFF: It's not regarding her inability to be fair. It's regarding a personal matter.

THE COURT: Just have a seat. I'll talk to you about that. Don't worry about it."

¶ 12    Later, the court questioned Pamela Russell directly:

"THE COURT: You raised your hand earlier. You're telling me that before you even hear any evidence that you got your mind made up about something about this case. Is

that what I understand, ma'am? Is that right?

A. I think so. My daughter–

Q. Hey, it's okay. I have my own thoughts about–

A. I forgot get [*sic*] to tell you–

Q. It's all right. I'm just trying to get fair people. You're telling me you're an unfair woman, that you're prejudice[d]. I don't have time right now."

The court excused Ms. Russell for cause. Later in chambers, the court told the attorneys that it was "short with her" because it "didn't want her to spoil the whole venire." Both of the court's conversations with Ms. Russell took place in the presence of the other prospective jurors.

¶ 13 After the jury was selected, but before the trial began, the defense made an oral motion *in limine* to bar any evidence of gang affiliation. The defense argued that the probative value of the gang evidence was substantially outweighed by the unfair prejudice that would flow from that evidence. The court denied the motion, but ordered the State to limit the gang evidence to the circumstances of the identification of the defendant by the witnesses.

¶ 14 Of the State's witnesses discussed in this decision, Garcia was called first. Garcia testified that he believed the defendant and the others were members of the gang. The court interrupted Garcia's testimony to instruct the jury.

"Ladies and gentlemen of the jury, you are getting this information not just to brand people as [gang members] or anything else, but you're getting this because this is [the] basis of witness identification. For that reason, you're being allowed to hear about it. That's why it's relevant as it goes to part of the reason he is able to make identifications in court in this trial."

Detective Maderer was called next. He testified that he believed Lopez, Omar, and Zuniga were members of the same gang. Following Ortiz's testimony, who did not testify to any gang affiliation by the perpetrators, Detective Garcia testified. Detective Garcia stated that in the course of his investigation he learned that the defendant and the other perpetrators were members of the same gang. The court did not issue a limiting instruction during either detective's testimony.

¶ 15 When the State rested, the defense presented no evidence. The jury found the defendant guilty of robbery and murder. In his posttrial motion, the defendant argued the court erred by admitting evidence of gang membership and testimony of the December 4 incident. The trial court sentenced the defendant to 30 years in prison on the three murder counts, with a concurrent sentence of seven years for robbery. The court denied the defendant's motion to reconsider his sentence. The defendant timely appeals.

¶ 16                                         ANALYSIS

¶ 17 The defendant makes three arguments to challenge his convictions: (1) the trial court erred in admitting testimony about the December 4 incident because there was insufficient proof that the defendant was involved to admit "prior crimes" evidence; (2) the trial court erred in admitting evidence of the defendant's gang membership because the probative value

of the evidence was substantially outweighed by the risk of unfair prejudice; and (3) the trial court deprived the defendant of a fair and impartial jury under the plain error rule when it threatened one member of the venire with month-long jury service after she admitted to having a bias against gangs, which inhibited the remaining jury pool from candidly admitting to the same bias.

¶ 18    The State contends that no evidentiary errors occurred and, even if error occurred, the evidence against the defendant was overwhelming, rendering any such error harmless. Regarding the defendant's plain error claim, the State contends the defendant offers nothing more than speculation that a biased jury was selected to hear his case.

¶ 19                               Prior Crimes Evidence

¶ 20    The defendant first argues that the trial court erred in admitting evidence of the attack that took place at the tortilla factory parking lot on December 4, approximately three weeks before the murder and robbery. The defendant contends there was insufficient proof that he was present during the incident. Premised on this contention, the defendant asserts the circuit court committed reversible error by admitting evidence of "other crimes." As authority on the limited admissibility of "other crimes" evidence, the defendant cites *People v. Phillips*, 127 Ill. 2d 499 (1989); he cites *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991), for the requirement that the defendant's involvement in those other crimes must be proved before such evidence may be found admissible. For factual support, the defendant relies on Garcia's admission during cross-examination that he was not sure the defendant participated in the incident on December 4 to argue that proof of his involvement was lacking. He contends we should review this contention *de novo* because the issue concerns "the improper use of other crimes evidence [that] exceeded the bounds of the law," which, he contends, raises a purely legal question. See *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994) ("The trial judge's decision [for review on appeal] was based on his interpretation of the admissions exception to the rule against hearsay[, which raises a legal question].").

¶ 21    The State counters that the testimony regarding the incident on December 4 "was not 'other crimes' evidence." Rather, it was relevant, circumstantial evidence that was "part and parcel of the [charged offenses, that] *** provided context of the motive" for the murder. In effect, the State argues the analysis for the admission of "other crimes" evidence does not apply to the evidence of the December 4 incident. The State contends it need only show that the testimony regarding the earlier occurrence was relevant to the question of the defendant's involvement in the murder and robbery. It contends the evidence of the December 4 incident was a straightforward evidentiary ruling, which is subject to review under an abuse of discretion standard. In support, the State cites *People v. Manuel*, 294 Ill. App. 3d 113 (1997).

¶ 22    We reject the defendant's claim that the facts are not in dispute concerning the December 4 incident to warrant *de novo* review. Garcia testified on direct examination that the defendant was present during the December 4 incident. That defense counsel was able to elicit an admission from Garcia that he "could not be sure" the defendant was present does not erase Garcia's testimony on direct examination. The defendant's presence at the December 4 incident was disputed. The abuse of discretion standard applies. *People v.*

*Placek*, 184 Ill. 2d 370, 385 (1998) (evidentiary rulings are reviewed against an abuse of discretion standard).

¶ 23　　Typically, evidence of crimes for which a defendant is not on trial is inadmissible because it may tend to prove the defendant has a propensity to commit crime, from which the jury might improperly conclude that he acted in conformity with that propensity regarding the charged offense. *Thingvold*, 145 Ill. 2d at 452. However, when evidence of other crimes is offered to prove some material question in the trial–such as *modus operandi*, intent, identity, motive or absence of mistake–then such evidence may be admitted for that purpose. *Id.* However, under this exception, its proponent must show "that a crime took place and that the defendant committed it or participated in its commission." (Emphasis omitted.) *Id.* at 455.

¶ 24　　Different evidentiary rules apply regarding evidence of other crimes that are unrelated to the charged offenses and other crimes evidence that is "part and parcel" of the charged offenses, as the State contends here. Under the latter circumstance, the admission of evidence that includes proof of other crimes is analyzed "under ordinary relevancy principles." *Manuel*, 294 Ill. App. 3d at 124. The shorthand distinction regarding such evidence is whether the contested evidence is *extrinsic* or *intrinsic* to the charged offenses. If the contested evidence concerns " 'extrinsic acts' *** [then the other] wrongful acts *** may not be admitted to demonstrate defendant's propensity to commit the crime charged, but may be admitted if it is relevant to establish some other material question." *Id*. (citing *People v. Davis*, 248 Ill. App. 3d 886, 891 (1993)). If the contested evidence concerns intrinsic acts, that is, the evidence concerns "a necessary preliminary to the current offense," then the evidence is admissible under principles of ordinary relevance. *Manuel*, 294 Ill. App. 3d at 124. See also *People v. Rutledge*, 409 Ill. App. 3d 22, 25 (2011) ("if the evidence of the other offenses and the evidence of the crime charged are inextricably intertwined, the rule relating to other crimes is not implicated and ordinary relevancy principles apply"); *People v. Figueroa*, 341 Ill. App. 3d 665, 672 (2003) ("where the trial court properly admitted evidence of other criminal acts that occurred at the same time and place and that were related to the criminal action for which the defendant was being tried, no limiting instruction is required").

¶ 25　　Stated differently, if the prior crime is part of the "course of conduct" leading up to the crime charged, then it constitutes intrinsic evidence of the charged offense and its admissibility is not analyzed as "other crimes" evidence, requiring proof that the defendant committed or participated in the uncharged offense. *Manuel*, 294 Ill. App. 3d at 124. This distinction is illustrated by the *Manuel* case.

¶ 26　　In *Manuel*, the defendant was charged with delivering cocaine after he arranged a sale to a police informant working with an undercover police officer. *Id.* at 116. Over the defendant's objection, the court admitted evidence that the defendant had arranged prior drug sales with the same police informant. *Id.* at 123. To challenge his conviction, the defendant argued that admission of drug sales prior to the one for which he was charged was impermissible because it constituted "other crimes" evidence. *Id.* We affirmed. We explained that the evidence did not constitute "other crimes" evidence unrelated to the charged offense because the previous drug sales were precursors to the actual crime and provided context. *Id.*

at 123-24. Even though the earlier sales were not part of the drug sale for which the defendant was charged, the earlier drug sales "were a necessary preliminary to the current offense." *Id.* at 124. As such, the evidence of the previous drug sales was subject only to ordinary relevancy analysis. *Id.* Applying those principles, we held "the evidence was relevant to show Manuel's course of conduct and his illicit relationship" with the informant. *Id.*

¶ 27    *Rutledge* followed the same reasoning and cited *Manuel* with approval. In *Rutledge*, the defendant was sitting in a car parked in an alley with a woman; he was intoxicated and became angry when the woman refused his sexual advances. *Rutledge*, 409 Ill. App. 3d at 23. The defendant began hitting the woman, who got out of the car and ran to a man standing in his open garage. *Id.* The defendant approached, and the man identified himself as a police officer. *Id.* The defendant struck the police officer, at which point he was arrested. *Id.* at 24. The defendant appealed his conviction arising from the physical assault of the officer, arguing it was plain error to admit evidence that he struck the woman in the car because it was a prior crime. *Id.* at 25. This court held that the contested evidence was properly admitted. *Id.* at 26. We noted that evidence of another crime is admissible when it is "inextricably intertwined" with the crime charged. *Id.* at 25. We held that evidence of the defendant's actions toward the woman was necessary to show that he was "drunk and angry," which tended to explain the events leading up to the altercation with the officer. *Id.* at 25-26. Without that evidence, the jury would be left with no explanation for the defendant's behavior. *Id.*

¶ 28    The evidentiary rule followed in *Manuel* and *Rutledge* applies with equal force here. The State's theory of the case was that the group of men killed the victim because they were seeking retaliation against the workers at the tortilla factory for sheltering the man they attacked on December 4. The incident of December 4 provided an explanation for the murder. Without evidence of the December 4 incident, the jury would be left to wonder why the attack on December 23 occurred. The earlier incident provided context for the charged offenses. The earlier incident falls within the rationale for such evidence as we explained in *Figueroa*: "the testimony as to other crimes touches upon the facts leading up to the commission of the crime for which [the defendant] was charged as well as evidence of his intent and motive." *Figueroa*, 341 Ill. App. 3d at 671.

¶ 29    The defense argues that the prosecution could have relied upon the robbery to prove the killers' motive, making evidence of the earlier incident unnecessary. Under the controlling standard of review, it is not our role to second-guess the circuit court's exercise of its discretion. The trial court ruled the evidence of the December 4 incident was relevant to prove the murder. Simply because the prosecution might have explained the defendant's criminal acts by pointing to the robbery of the victim does not demonstrate that admission of the December 4 incident constituted an abuse of the trial court's discretion. "Although the State possibly could have proved its case without this evidence, there is no rule that requires the State to present a watered-down version of events simply because otherwise highly probative evidence is unflattering to defendant." *Rutledge*, 409 Ill. App. 3d at 26. The burden is on the defendant to demonstrate that the circuit court abused its discretion.

¶ 30    Under the evidentiary rule applied in *Manuel*, *Rutledge*, and *Figueroa*, the December 4

incident was probative of the defendant's involvement in the December 23 murder and robbery. Both attacks occurred in the same parking lot of the tortilla factory. The phone call on December 23 from Daniel for assistance in beating up someone, overheard by Garcia, also adds to the connection between the two attacks. In fact, had the December 4 incident not ended as it did, the otherwise inexplicable brutal attack on December 23 might not have occurred. At the December 4 incident, employees of the tortilla factory gave refuge to at least one of the victims of the attack by the defendant and his group. At least one attacker pounded on the factory door demanding that the person return; when no one responded, the group took out their anger on a car in the lot. The evidence of the December 4 incident gave rise to a reasonable inference that the two attacks were connected, which made evidence of the December 4 incident probative of the defendant's involvement in the murder and robbery. It was well within the circuit court's discretion to conclude that the December 4 attack was a precursor to the attack on December 23; the December 4 incident "provided an explanation of an aspect of the crime not otherwise understandable." *Manuel*, 294 Ill. App. 3d at 124.

¶ 31    The defendant vigorously maintains that no evidence exists that he was present on December 4. As we pointed out above, the evidence is to the contrary. Garcia testified on direct examination that the defendant was among the men present during the attack on December 4. That Garcia acknowledged his identification may have been uncertain on cross-examination provides no basis to rule the December 4 incident inadmissible. Nor has the defendant provided us with authority to that effect. That cross-examination raised doubts concerning Garcia's testimony on direct examination that the defendant was present at the December 4 incident simply raised a question of fact for the jury to resolve. The inconsistency does not compel the legal conclusion that the evidence of the December 4 attack was extrinsic to the murder and robbery on December 23.

¶ 32    We also point out that the intrinsic nature of the December 4 evidence negates the defendant's contention that the State had to prove that "the defendant committed *** or participated in" the December 4 incident. (Emphasis omitted.) *Thingvold*, 145 Ill. 2d at 455. No such showing was required because the contested evidence was not "extrinsic" to the murder and robbery charges against the defendant. While we conclude Garcia's testimony was sufficient to put the defendant's participation in the December 4 incident before the jury, a more conclusive showing, as the defendant contends, was not required under the rule applied in *Manuel*, *Rutledge*, and *Figueroa*. Relevancy was key and that was shown by the involvement of some of the same individuals on December 4 that participated in the murder; that showing was sufficient for the admission of the contested evidence. In other words, even if the evidence of the December 4 incident established that the defendant was not present, the jury was free to infer, based on the evidence before it, that the defendant took part in the murder and robbery to help his friends avenge their vendetta against the employees of the tortilla factory.

¶ 33    Nor are we persuaded that the incident on December 4 constituted impermissible evidence of "guilt by association," as the defendant claims. The defendant's guilt of the December 23 murder and robbery turned on the evidence of his direct involvement in the events of that date. The incident on December 4 provided an explanation for the murder and robbery, which tended to prove that the murder and robbery were committed by some of the

individuals involved in the prior attack. It fell to the jury to decide whether the defendant was one of those men involved in the attack on December 23, which the jury did when it returned a verdict of guilty of murder and robbery.

¶ 34 The December 4 incident provided the context for the murder; it was not offered to prove the defendant's propensity to commit acts of violence. The defendant's involvement in the December 4 incident was admissible on relevancy grounds even if, as the defendant contends, Garcia's identification of the defendant as present on that date was thoroughly undermined during cross-examination, a proposition we find unsupported by the evidence.

¶ 35 The circuit court did not abuse its discretion in admitting evidence of the December 4 attack at the parking lot of the tortilla factory.

¶ 36                                            Gang Evidence

¶ 37 The defendant next contends the trial court erred by permitting evidence that he was a member of a street gang. He contends the gang evidence gave rise to unfair prejudice, which substantially outweighed the probative value of the evidence. While acknowledging the limiting instruction provided the jury during Garcia's testimony, he argues the instruction was faulty because the jury was not told it could consider the evidence "only" for identification purposes.

¶ 38 The State maintains that the gang evidence was admitted for the limited purpose of showing Garcia's ability to identify the defendant. The State argues that even if the gang evidence was erroneously admitted, the defendant cannot show he was unfairly prejudiced because the gang evidence was limited.

¶ 39 Once again, our standard of review is abuse of discretion. *People v. Lucas*, 151 Ill. 2d 461, 489 (1992). Evidence is admissible if it is relevant and its probative value is not substantially outweighed by its unfair prejudice. *People v. Eyler*, 133 Ill. 2d 173, 218 (1989). "Relevant evidence is defined as evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *People v. Gonzalez*, 142 Ill. 2d 481, 487-88 (1991). It is the function of the trial court to weigh the probative value of the evidence against the risk of unfair prejudice it carries; we will not overturn a court's decision on that balancing process absent a clear abuse of that discretion. *People v. Johnson*, 208 Ill. 2d 53, 102 (2003).

¶ 40 Evidence that a defendant is a member of a gang must be admitted with care because gangs are regarded with considerable disfavor by our society. *People v. Strain*, 194 Ill. 2d 467, 477 (2000). However, evidence of gang membership is admissible if it qualifies as relevant evidence and its probative value outweighs the unfair prejudice it engenders. *Johnson*, 208 Ill. 2d at 102. When considering gang evidence, the circuit court applies the same balancing test it uses for all other types of evidence. *Id.*

¶ 41 In this case, the trial court ruled it would permit the State "to talk about them being members [of a gang] and that's the basis of how they're identified." The court permitted Garcia to testify that he knew the defendant and the other perpetrators from his neighborhood, that Daniel Roman and the defendant were both members of the same gang, and that the gang had a presence in the neighborhood. Detective Garcia testified that in the

course of his investigation he learned that the defendant and Omar were brothers and were both members of the same gang. Detective Maderer testified that he believed Zuniga and Lopez were also in that gang.

¶ 42    The defendant does not directly challenge the trial court's ruling that the gang evidence tended to strengthen the eyewitness's identification of the defendant. He merely argues the testimony was unnecessary. Garcia's familiarity with the defendant was based in part on his observation of the defendant's activity in the neighborhood, which included flashing gang signs.

¶ 43    The defendant insists the gang membership testimony was unnecessary for purposes of identification; it would have been sufficient for Garcia to testify to having seen the defendant in the neighborhood. The circuit court ruled otherwise. During our review of an evidentiary-type error, we owe considerable deference to the circuit court. *Lucas*, 151 Ill. 2d at 489. We are presented with no persuasive argument that Garcia's testimony should not have brought forth the circumstances in which he observed the defendant in the neighborhood. While we agree that gang affiliation was not the sole basis for the witness's identification, Garcia's attention to the defendant in the neighborhood was drawn at least in part to his flashing of gang signs.

¶ 44    As the defendant acknowledges in his brief, the State's case turned on the reliability of the identifications of the defendant by the eyewitnesses: "the entire case rested on the credibility of Garcia and Ortiz." The critical nature of the testimony of Garcia and Ortiz weighs in favor of permitting the jury to hear all evidence that tended to make the witnesses' identifications reliable. *Gonzalez*, 142 Ill. 2d at 488. This conclusion is bolstered by the defendant's challenge to the reliability of the testimony of the eyewitnesses, which he contends in this court was undermined by their failure to promptly inform the police of what they saw, much as the defendant argued before the jury. That Garcia knew of the defendant's gang affiliation was relevant to explain his reluctance to come forward.

¶ 45    Under the balancing test, the gang evidence was subject to exclusion only if its probative value was substantially outweighed by its prejudicial impact. *Eyler*, 133 Ill. 2d at 218. The circuit court's ruling on this balancing test is subject to substantial deference. *Johnson*, 208 Ill. 2d at 102. To demonstrate an abuse of that discretion by the circuit court below, the defendant relies on precedent that observed gang activity is heavily disfavored in our society. *People v. Terry*, 312 Ill. App. 3d 984, 992 (2000). There is no question that gang evidence must be admitted with care. That, however, does not render every decision to permit such evidence an abuse of the trial court's discretion.

¶ 46    In the instant case, the trial court determined that it was important for the jury to hear limited gang evidence to assist it in assessing the identification testimony of Garcia. The court ruled the probative value of the gang evidence on the identification issue outweighed the danger of unfair prejudice arising from that same evidence. It would be unfair to ask the jury to assess whether Garcia, and possibly Ortiz, was worthy of belief while depriving the jury of part of the basis for Garcia's familiarity with the defendant. In other words, the "gang-related evidence strengthened the [witness's] identification testimony." *Gonzalez*, 142 Ill. 2d at 488. The court also instructed the jury on the limited purpose for the admission of gang

evidence during Garcia's testimony.

¶ 47    On our review of the record, we cannot say the circuit court abused its discretion in admitting limited gang membership evidence from eyewitness Garcia.

¶ 48    Nor does the court's decision to permit Detectives Garcia and Maderer to testify about possible gang membership of the assailants change our assessment of the prejudicial impact of gang membership evidence. Their testimony on gang membership was limited and it is fair to say was part of the narrative explaining their investigation. See *Gonzalez*, 142 Ill. 2d at 488. The gang membership evidence was apparently also offered to corroborate Garcia's identification testimony. Gang membership also explained the reluctance of the eyewitnesses to promptly speak to the police, which was properly elicited through the testimony of the detectives.

¶ 49    Finally, as we noted, to ameliorate the prejudice arising from the gang evidence, the court instructed the jury that such evidence was admitted for a limited purpose. The defendant criticizes the limiting instruction because it did not tell the jury to consider the gang evidence "only" for purposes of identification; nor did the instruction remind the jury that, as trier of fact, it fell to the jury to decide whether the defendant was truly in a gang and the weight to ascribe to that finding.

¶ 50    We will not find reversible error based on claimed defects in a limiting instruction in the absence of a more complete instruction offered by the defendant at the time. *Cf. People v. Fontana*, 251 Ill. App. 3d 694, 701-02 (1993) (holding that a defendant's "failure to tender *** an instruction waives any objection concerning its absence"). Where no such offer was made by the defendant, our only concern is whether the defendant demonstrated an abuse of discretion in admitting gang evidence. The defendant has made no such showing here.

¶ 51    The trial court did not abuse its discretion in admitting limited evidence of the defendant's membership in a gang.

¶ 52                                    Jury Bias

¶ 53    Finally, the defendant raises as plain error the trial judge's comments to a potential juror excused for expressing a bias against gangs. The defendant contends the trial judge's comments tainted the jury pool. The defendant argues that because the judge threatened this potential juror with month-long jury service, he discouraged other jurors from candidly expressing a bias against gangs. According to the defendant, the comments might well have inhibited prospective jurors during *voir dire* from providing complete candor, which might well have resulted in individuals with a bias against gangs seated as jurors to decide the defendant's fate.

¶ 54    The State responds the record does not support the defendant's claim that the trial court's comments inhibited the remaining members of the jury pool from candidly answering questions during *voir dire*. The State asserts nothing in the record supports defendant's claim of a biased jury. The State contends that absent any support in the record, the defendant's claim amounts to speculation.

¶ 55    This court may address an issue that has been forfeited if the error is so serious that it

denied the accused a fair and impartial trial. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain error rule allows consideration of unpreserved errors "affecting substantial rights." *People v. Wembley*, 342 Ill. App. 3d 129, 138 (2003). The plain error rule may only be invoked in two limited circumstances. *People v. Herron*, 215 Ill. 2d 167 (2005). The first is when the evidence is so closely balanced that the jury's verdict may have resulted from the error and not the evidence, which raises the risk of convicting an innocent person. *Id*. at 178-79. The second occurs when the error is so serious that the defendant was "denied a substantial right, and thus a fair trial." *Id.* at 179. The second prong of plain error serves to protect the integrity of the judicial process. *Id.* The defendant relies only on the second prong to claim plain error and asserts the forfeiture rule is less rigidly applied when the trial judge's behavior is at issue, citing *People v. Young*, 248 Ill. App. 3d 491, 498 (1993).

¶ 56    " 'The purpose of *voir dire* is to assure the selection of an impartial panel of jurors who are free from bias or prejudice.' " *People v. Brown*, 388 Ill. App. 3d 1, 4 (2009) (quoting *People v. Terrell*, 185 Ill. 2d 467, 484 (1998)). The trial court has discretion to determine the scope and manner of *voir dire*. *Id.* The trial court only abuses its discretion when "the judge's conduct 'thwarted the selection of an impartial jury.' " *Id.* (quoting *People v. Williams*, 164 Ill. 2d 1, 16 (1994)).

¶ 57    In *Brown*, the trial court began jury selection by reading the charges against the defendant and asking if any prospective juror had concerns about the case based on the charges. *Id.* at 2. One member of the pool claimed bias; the judge excused him but ordered him to return to the courtroom the next day to observe the trial because the individual " 'need[ed] an education as to how the system works.' " *Id.* at 2-3. The judge asked the remaining members of the pool a series of questions regarding the ability of each to decide the case fairly. *Id.* at 3. No remaining member of venire indicated any qualms about his or her ability to be impartial. *Id.* The court questioned each prospective juror individually, with questions posed by the defense and the State as well. *Id.*

¶ 58    In the instant case, the issue urged before us is the very issue we addressed in *Brown*: whether the judge's conduct during *voir dire* constituted plain error. *Id*. at 6, 11. While we questioned the prudence of the trial court in *Brown* to impose an "education" on the potential juror, we concluded the exchange did not rise to the level of plain error. *Id.* at 5. Importantly, there was nothing in the record in *Brown* to indicate that the court's treatment of the excused prospective juror "chilled" the responses of the other members of the pool such that some who might harbor partiality would be afraid to admit it and end up serving on the jury. *Id*. at 9-10. Our examination of the record failed to support the claim of a biased jury. *Id*. at 9-10. Ultimately, we decided that while " 'it would have been better if some of the comments [by the trial judge] had not been made,' " there was "no reason to forego applying the forfeiture rule." *Id*. at 10-11 (quoting *Young*, 248 Ill. App. 3d at 503).

¶ 59    *Brown* is indistinguishable from the instant case. Implicitly recognizing this, the defendant urges that we abandon the analysis employed by the majority in *Brown* and adopt the dissent's approach, which proposed that while mere criticism may constitute harmless error, a threat of punishment during *voir dire* rises to the level of plain error. *Id.* at 14. (Gordon, J., dissenting). We reaffirm our holding in *Brown*. "We emphasize there is nothing in the record to indicate that any juror seated in this case was not impartial." *Id*. at 10. "[W]e

reject, as grounded on nothing more than speculation, the defendant's contention that the conduct engaged in by the trial judge here impacted his right to a fair trial" *Id*. To establish plain error under the second prong, the defendant must show the selected jury was biased.

¶ 60    Absent evidence that the instant defendant did not receive a fair trial before a fair and unbiased jury, there is no basis to find plain error. *Id*. at 11. The claimed error is forfeited. *Id*.

¶ 61                              Correction to Mittimus

¶ 62    As a housekeeping matter, the defendant contends, and the State agrees, that the sentencing order improperly lists three convictions of first degree murder. See *People v. Crespo*, 203 Ill. 2d 335, 340-41 (2001) (a single murder victim can give rise to only a single conviction of murder). Pursuant to Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967), the mittimus is corrected to reflect counts II and III are merged into count I. A single judgment of conviction of first degree murder is entered on count I, charging intentional killing.

¶ 63                                  CONCLUSION

¶ 64    No abuse of discretion occurred when the trial court permitted evidence of the December 4 incident as intrinsic evidence that was relevant to the defendant's involvement in the murder and robbery that occurred on December 23 at the same location. Nor did the trial court abuse its discretion in admitting gang membership evidence to strengthen an eyewitness's identification of the defendant, where the jury was instructed on the limited purpose of that evidence; the danger of unfair prejudice of gang evidence was not outweighed by its probative value. Finally, the trial judge's comments directed at a single prospective juror during *voir dire* did not support the defendant's claim that a biased jury was selected to decide the defendant's fate. No plain error showing was made. We affirm the defendant's convictions of first degree murder and robbery. We order the mittimus corrected to reflect a single judgment of conviction of murder.

¶ 65    Affirmed; mittimus corrected.