# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Lopez*, 2013 IL App (1st) 102938

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS LOPEZ, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-2938 |
| Filed | May 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for the murder of a factory worker in the factory parking lot was reversed and the cause was remanded for a new trial on the ground that the trial court improperly admitted evidence concerning an earlier incident in which three of defendant's codefendants beat a man in the same parking lot, since the State only asserted that defendant was near the factory at the time of the earlier incident, there was no evidence that he was involved in the earlier beating, and the evidence could have persuaded the jury that defendant was a bad person and should be punished. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-03180; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Reversed and remanded for new trial. |

| Counsel on Appeal | Michael J. Pelletier and Emily S. Wood, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Peter Fischer, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Sterba and Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1    A jury convicted the defendant, Carlos Lopez, of murder after finding that he and several codefendants beat to death a factory employee in the parking lot where the victim worked. The trial court sentenced Lopez to 22 years in prison. Lopez contends several errors at trial are grounds for reversing his conviction, including the admission of evidence about an attack on a man by some of Lopez's codefendants in the same parking lot about three weeks earlier. For the following reasons, we reverse Lopez's conviction and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3    In the early hours of December 24, 2007, Francisco Reyes was beaten and killed by a group of men in the parking lot of a tortilla factory in Chicago. Carlos Lopez and five other men, Daniel Roman, Martin Roman, Ismael Morales, Omar Morales, and Adolfo Zuniga, who lived in the neighborhood, were later arrested and charged with three counts of murder and one count of robbery. The State later dropped the robbery charge against Lopez. Before trial, defense counsel filed a motion *in limine*, to exclude evidence regarding an incident on December 4, 2007, when three of Lopez's codefendants beat a man in the factory parking lot and smashed car windows. The defense also sought to exclude evidence of Lopez's gang membership. The trial court denied both requests, finding the evidence more probative than prejudicial.

¶ 4    Lopez, who was 15 years old at the time of his arrest, was tried separately from his codefendants. The State's evidence at trial consisted primarily of the testimony of two eyewitnesses, Sylvia Ortiz and Fernando Garcia, who saw the murder occur. Ortiz and Garcia lived with their son in the second floor of an apartment building across the street from the tortilla factory. They said they watched the crime from separate windows of their apartment, which faced the parking lot.

¶ 5    Under the State's theory of the case, events leading up to the murder began in the early morning hours of December 4, 2007. Sylvia Ortiz testified that after arriving home from work around 1 a.m., she heard a banging noise outside. She looked out her window and saw

three men hitting the factory door with baseball bats. Ortiz recognized all three men, Daniel Roman, Martin Roman, and Ismael Morales, because she frequently observed them hanging around the neighborhood. When no one opened the factory door, she saw the men break car windows in the parking lot. Ortiz called the police, who arrived about 15 minutes later.

¶6 One of the factory employees, Pedro Martinez, testified he arrived at work on the evening of December 3 and saw a group of young men, including Lopez, hanging out on the corner near the factory. Later that evening, a man whom Martinez had not seen before, came to the factory to sell a car jack. The man said a friend was waiting outside. A few minutes later, the friend came into the factory. He had been beaten up and his face was bleeding. Loud banging on the factory door could be heard, and the two men stayed in the factory until the banging stopped. Martinez went outside and saw that his car windows were broken and another car was damaged. Martinez saw the same crowd of five or six young men, including Lopez, standing on the corner. He testified that he frequently saw these men near the factory when he arrived at and left work.

¶7 About three weeks later, on December 24, Ortiz and Garcia were home around midnight when they heard a voice outside. They both recognized the person speaking as Daniel Roman, who was talking on a cell phone. Ortiz said that Daniel told the person on the phone to come over and made a waving motion with his hand. Garcia heard Daniel say "come help me, I need to fuck him up, come help me, from the factory, let's fuck him up." Soon after, Lopez, Ismael Morales, Omar Morales, and Martin Roman arrived. After the men gathered, Garcia heard someone say "Let's get him; let's fuck him up." The group walked to the factory parking lot where Francisco Reyes was driving a forklift. Juan Ramirez, one of Reyes' coworkers, testified that a supervisor had sent Reyes out to the parking lot shortly before the murder to unload a shipment of corn. The group grabbed Reyes off the seat of the forklift, forced him to the ground, and began hitting and kicking him. At some point, Adolfo Zuniga arrived in a car and joined the others in beating Reyes. As Reyes lay on the ground, one of the men removed Reyes' wallet from his pocket. Then one of the perpetrators went across the street and picked up a concrete rock. Garcia testified Ismael Morales dropped the rock on Reyes' head and then Lopez dropped the rock on him a second time. Ortiz also testified that a rock was dropped on Reyes' head, but did not identify who dropped it. After striking Reyes with the rock, the men scattered.

¶8 Inside the factory, a supervisor asked Juan Ramirez to check on Reyes because he had not returned from unloading the corn. Ramirez found Reyes lying on his back in the parking lot and ran back into the factory to call 911. Reyes was taken to a hospital. He died the next day. The medical examiner testified that Reyes died of multiple cranial injuries caused by blunt force trauma.

¶9 Detectives Roberto Garcia and Peter Maderer investigated the murder. On December 27, Fernando Garcia went to the police station and told Detective Garcia what he saw the night of the murder. He testified he did not come forward earlier because he feared retribution, particularly because the uncle of some of the perpetrators lived in the apartment below his. Garcia identified photos of Lopez, Omar Morales, Ismael Morales, Daniel Roman, Martin Roman, and Adolfo Zuniga as the perpetrators. Initially, Garcia identified Carlos Lopez's brother as being Carlos, but later identified Carlos as one of the perpetrators. Garcia also

viewed three in-person lineups. At the first, he identified Ismael Morales, Daniel Roman, Martin Roman, and Adolfo Zuniga as the perpetrators. At the second, he identified Omar Morales. At the third, he identified Lopez. At trial, Garcia made an in-court identification of Lopez as one of the men who beat Reyes.

¶ 10    On January 1, 2008, Sylvia Ortiz spoke to Detective Garcia at the police station about the December 24 murder. She too testified she did not come forward sooner because she was afraid. The police showed Ortiz photos. She identified Ismael Morales, Daniel Roman, and Martin Roman as three of the perpetrators. Ortiz later viewed three in-person lineups. At the first, she identified Ismael Morales, Daniel Roman, and Martin Roman. At the second lineup, she identified Omar Morales. At the third lineup, she identified Lopez. She also identified him in court.

¶ 11    During the trial, Fernando Garcia testified he believed Lopez and his codefendants were members of a street gang, the Latin Kings, because he frequently saw them making gang signs and throwing rocks at the cars of rival gang members. During Garcia's testimony, the trial court instructed the jury as follows:

> "This evidence is not to be considered by you–he is not accused of being in a gang. That's not what he's on trial for, but this evidence is given as it may indicate the witness's basis of his identification. This is how he claims to know who the people are that he is suggesting are involved in this matter. It is for the basis of identification and possible motive."

¶ 12    Lopez did not testify or present any witnesses during the trial. Following closing the jury deliberated and found Lopez guilty of first degree murder. In his motion for a new trial, Lopez argued, in part, the State made prejudicial, inflammatory, and erroneous statements in its closing argument and the trial court erred by admitting evidence about the December 4 incident and Lopez's gang membership. The trial court denied the motion and sentenced Lopez to 22 years in prison. Lopez's motion to reconsider his sentence was denied. Lopez filed this timely appeal.

¶ 13                                    II. ANALYSIS

¶ 14    Lopez raises four issues on appeal, two involving errors by the trial court, two involving errors by defense counsel and the prosecutor. The first error deals with the trial court's admission of "other crimes" evidence against Lopez, namely the attack in the tortilla factory parking lot on December 4, about three weeks before Reyes' murder. The other errors involve the State's introduction of evidence of gang membership; the effectiveness of defense counsel in presenting a theory in opening statements that she did not support with evidence at trial; and the State's remarks during closing argument about Lopez, the victim, and the State's witnesses. Because we agree with Lopez's first contention, that the trial court erred in admitting other-crimes evidence against him during trial requires reversal and remand, we address the first issue only and do not address the remaining three issues.

¶ 15    During Lopez's trial, two of the State's witnesses, Sylvia Ortiz and Pedro Martinez, testified about the December 4 incident in the factory parking lot. Ortiz testified she saw three of Lopez's codefendants, Daniel Roman, Martin Roman, and Ismael Morales, hitting

the factory door with baseball bats and breaking car windows. Martinez testified that a man had been beaten up outside the factory, that when the man went inside the factory, there was loud banging on the factory door, and that when he later went outside he saw that someone had smashed the windows on several cars, including his own. He also testified that he saw Lopez hanging out on the corner when he entered the factory that night and later when he went to check on his car.

¶ 16　　Lopez asserts the trial court erred in permitting any testimony regarding the December 4 incident, because the State failed to present evidence showing he participated in that attack, which is a prerequisite for admitting other-crimes evidence. The State argues the testimony about the December 4 incident was properly admitted because Lopez was present when it occurred and it was "relevant circumstantial evidence that was part and parcel of the murder in that it helped put into context defendant's behavior and activities." The State further contends even if Lopez was not present, it only needs to show the testimony regarding the earlier occurrence was relevant to the question of Lopez's involvement in the murder and robbery.

¶ 17　　It is well established that evidence of other crimes or bad acts for which a defendant is not on trial is inadmissible if relevant merely to show his or her propensity to commit crimes. *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991). The evidence is admissible, however, if it is relevant for other purposes, including to prove the defendant's motive in the charged crime, or his intent, identity, or *modus operandi*, or the absence of mistake related to that crime. *Id*. When this evidence is offered, the trial court must consider the relevance of the evidence for the purpose offered as weighed against the prejudicial impact it could have on the defendant. *Id*.

¶ 18　　A defendant's bad character is not wholly irrelevant to the charges he or she faces in court, but because of the nature of this evidence, our courts have established rules regarding the admissibility of other-crimes evidence. Because this evidence involves prior bad acts, and even criminal acts, the concern is that the evidence will "overpersuade[ ] the jury, which might convict the defendant only because it feels he is a bad person deserving punishment." *Thingvold*, 145 Ill. 2d at 452. Therefore, before this evidence may be admitted and considered by the jury, "the State must first show that a crime took place and that *the defendant committed it or participated in its commission*." (Emphasis in original.) *Id*. at 455. Proof the defendant committed the crime, or participated in its commission, need not be beyond a reasonable doubt, but it must be more than a mere suspicion. *Id*. at 456.

¶ 19　　There was no evidence Lopez committed or participated in the commission of the December 4, 2007, attack. Pedro Martinez, a factory employee, testified that when he arrived at work, he saw Lopez on the corner near the factory and saw him again after going out to the parking lot to find his car windows broken. Martinez did not witness the man being beaten up, rocks being thrown at the factory door, or the cars being damaged, and therefore, he could not and did not testify Lopez was a participant. Sylvia Ortiz, the other witness, saw at least part of the incident from her apartment across the street. She identified only three perpetrators, Daniel Roman, Martin Roman, and Ismael Morales. She did not identify Lopez as a participant.

¶ 20　　　The State asserts the trial court did not err in admitting evidence of the December 4 incident because the evidence was not offered as other crimes evidence but, rather, was "relevant circumstantial evidence that was part and parcel of the murder" and was introduced to show the motive for the December 24 attack. The State argues there is a distinction between intrinsic evidence, *i.e.*, evidence of "course of conduct" leading up to the crime charged and extrinsic "other crimes" evidence, which requires proof a defendant committed or participated in the uncharged offense before it can be admitted. The State contends testimony about the December 4 incident was intrinsic evidence that showed a course of conduct resulting in the December 24 murder and, therefore, was not subject to traditional other-crimes analysis. For support, the State relies on *People v. Manuel*, 294 Ill. App. 3d 113 (1997), and *People v. Rutledge*, 409 Ill. App. 3d 22 (2011).

¶ 21　　　In *Manuel*, defendant was charged with delivering cocaine after he arranged a sale to a police informant working with an undercover police officer. *Manuel*, 294 Ill. App. 3d at 116. Over defendant's objection, the court admitted evidence that defendant had arranged previous drug sales with the same police informant. *Id.* at 123. In challenging his conviction, the defendant argued that admission of evidence about drug sales that occurred before the one for which he was charged was impermissible because it constituted other-crimes evidence. *Id.* The appellate court affirmed the conviction, finding the evidence did not constitute other-crimes evidence unrelated to the charged offense, because the previous drug sales were precursors to the actual crime and provided context. *Id.* at 123-24. Even though the earlier sales were not part of the drug sale for which the defendant was charged, they "were a necessary preliminary to the current offense." *Id.* at 124. Therefore, evidence of the previous drug sales was subject only to ordinary relevancy analysis. *Id.* Applying those principles, the appellate court found "the evidence was relevant to show Manuel's course of conduct and his illicit relationship" with the informant. *Id.*

¶ 22　　　*Rutledge* followed the same reasoning. In *Rutledge*, defendant was sitting with a woman in a car parked in an alley; he was intoxicated and became angry when the woman refused his sexual advances. *Rutledge*, 409 Ill. App. 3d at 23. Defendant began hitting the woman, who got out of the car and ran to a man standing in his open garage. *Id.* Defendant approached, and the man identified himself as a police officer. *Id.* Defendant struck the police officer and was arrested. *Id.* at 24. Defendant appealed his conviction arising from the physical assault of the officer, arguing it was plain error to admit evidence he struck the woman in the car because it was a prior crime. *Id.* at 25. The appellate court found the contested evidence was properly admitted, noting evidence of another crime is admissible when it is "inextricably intertwined" with the crime charged. *Id.* at 25-26. The evidence of defendant's actions toward the woman was necessary to show he was "drunk and angry," which tended to explain the events leading up to the altercation with the officer. *Id.* Without that evidence, the jury would have been left with no explanation for the defendant's behavior. *Id.* at 26.

¶ 23　　　The State asserts *Manuel* and *Rutledge* support a finding that evidence of the December 4 attack was admissible at trial to provide context for the seemingly random murder of Reyes on December 24. In short, the State argues Lopez and his friends were seeking retaliation against the factory employees for sheltering the man they were attacking on December 4.

Therefore, the State contends, evidence of the earlier attack was inextricably intertwined with the December 24 murder and was subject only to ordinary relevancy analysis.

¶ 24    *Manuel* and *Rutledge* are distinguishable, however. In both cases, there was no doubt the defendants participated in the earlier crime. Therefore, the initial threshold for admission of other-crimes evidence was met. Here, the trial testimony established an essential difference, that is, at most, Lopez was in the vicinity of the factory before and after the incident; no witnesses identified him as a participant.

¶ 25    The State counters that the holding in *People v. Morales*, 2012 IL App (1st) 101911, supports a finding that evidence about the December 4 incident was admissible regardless of whether Lopez was a participant. *Morales* was an appeal by one of Lopez's codefendants following his conviction for the murder and robbery of Reyes. Like Lopez, Morales argued the December 4 attack should not be admitted into evidence because there was insufficient proof he was involved in that incident. In *Morales*, unlike in this case, one witness, Fernando Garcia, testified Morales was present in the factory parking during the December 4 incident. *Morales*, 2012 IL App (1st) 101911, ¶ 4. Garcia wavered on cross-examination, however, stating he was not certain Morales was present that night. *Id*. The appellate court found "Garcia's testimony was sufficient to put the defendant's participation in the December 4 incident before the jury." *Id.* ¶ 32. Therefore, the threshold requirement for other-crimes evidence, defendant's participation in the prior crime, was established. Relying on *Manuel* and *Rutledge*, the *Morales* court then reasoned that if the evidence sought to be admitted could be considered "part of the 'course of conduct' leading up to the crime charged, then it constitutes intrinsic evidence of the charged offense and its admissibility is not analyzed as 'other crimes' evidence, requiring proof that the defendant committed or participated in the uncharged offense." *Id.* ¶ 25 (citing *Manuel*, 294 Ill. App. 3d at 124). Instead, the evidence is admissible under the more general, and lower threshold, principles of ordinary relevance. *Morales*, 2012 IL App (1st) 101911, ¶ 24. Based on this reasoning, the *Morales* court found the evidence of the earlier factory attack was properly admitted against the defendant as intrinsic to the subsequent murder by providing a context for that crime. See *id.* ¶¶ 30-32.

¶ 26    The *Morales* court, however, went further and held the evidence would have been admissible whether or not defendant was present or participated in the previous incident. *Morales*, 2012 IL App (1st) 101911, ¶ 32. The court stated "[n]o such showing was required because the contested evidence was not 'extrinsic' to the murder and robbery charges against the defendant." *Id*. The showing that some of the same individuals were involved in the December 4 and the December 24 incidents was sufficient for admission of the contested evidence. "In other words, even if the evidence of the December 4 incident established that the defendant was not present, the jury was free to infer, based on the evidence before it, that the defendant took part in the murder and robbery to help his friends avenge their vendetta against the employees of the tortilla factory." *Id*.

¶ 27    The State urges this court to apply the holding in *Morales* to find that even absent evidence Lopez was present during the December 4 incident, the evidence was admissible to establish the motive for the December 24 attack. There appears to be a split of opinion in this court, however, as to whether other-crimes evidence is admissible to show a course of

conduct leading up to a later crime, if the defendant did not participate in the earlier crime. Although the *Morales* court found the other-crimes evidence was admissible because it was relevant to show motive for the later crime, in *People v. Pikes*, 2012 IL App (1st) 102274, *appeal allowed*, No. 115171 (Ill. Jan 30, 2013), another division of this court reached the opposite conclusion.

¶ 28    In *Pikes*, the defendant was charged with first degree murder for a drive-by shooting at a group of rival gang members that killed one man. Before trial, the State made a motion to introduce evidence against both Pikes and his codefendant of an earlier shooting committed by codefendant. *Pikes*, 2012 IL App (1st) 102274, ¶ 4. As described in that motion, in the days before the drive-by shooting, a member of the Gangster Disciples street gang was riding a motor scooter when codefendant, a member of the Four Corner Hustlers street gang, shot at him. *Id.* Immediately afterward, a car driving behind the scooter struck the codefendant. Pikes argued that codefendant's shooting at the scooter should not be admitted as to him, since he was not present when it occurred. *Id.* While acknowledging that it was "unaware of any evidence that [defendant] was present at the time of the shooting," the State argued that this incident was relevant and admissible against both defendant and codefendant to show motive for the murder. *Id.* The trial court agreed with the State and admitted evidence of the incident against defendant and codefendant, finding that it was "extremely relevant[,] by far more probative than prejudicial" and "[w]ill help the jury understand the context" of the instant cause. (Internal quotation marks omitted.) *Id.* A jury convicted Pikes of first degree murder. *Id.* ¶ 17.

¶ 29    In appealing his conviction, Pikes argued, in part, that the trial court erred in admitting evidence of the scooter shooting against him since he was neither present nor involved in that other crime and that because the evidence was highly prejudicial, reversal was required. *Pikes*, 2012 IL App (1st) 102274, ¶ 23. The *Pikes* court held that because the State admitted it had no evidence Pikes was even present at the scooter shooting, let alone a participant, it failed to meet the threshold requirement for admission of other crimes evidence, defendant's involvement beyond a mere suspicion. *Pikes*, 2012 IL App (1st) 102274, ¶ 27.

¶ 30    The court also rejected the State's argument that *Morales* supported a finding that the evidence of the scooter shooting was admissible because it was not offered as other crimes evidence but, rather, only as relevant evidence of defendant's motivation in the victim's murder. *Pikes*, 2012 IL App (1st) 102274, ¶ 29. The court found *Morales* was factually distinguishable and that it carved out a "tenuous" exception to the rule regarding other crimes evidence. *Id.* ¶ 36. The court agreed that under *Manuel* and *Rutledge*, prior intrinsic incidents could be admitted under simple relevancy principles rather than requiring the higher threshold of proof for other crimes evidence. *Id.* ¶ 41. But, the court asserted, "what is dangerous about *Morales* is that it attempts to expand these holdings to cases where it is unclear whether the defendant participated in the prior acts." *Id.* ¶ 42. Where "there was no question that the defendants committed the prior acts sought to be introduced," the court said, "[w]e have no problem *** with the lower relevancy threshold." *Id.* ¶ 41. In light of *Thingvold* and other supreme court cases, however, the court found it could not follow *Morales* to find other crimes evidence admissible where the State failed to show beyond a mere suspicion that defendant was involved or participated in that crime. *Id.* ¶ 42. The *Pikes*

court noted that although the *Morales* court seemed to think such a distinction was irrelevant, "it still went out of its way several times to highlight the eyewitness testimony regarding the defendant's presence at the prior attack." *Id*. The court found that where the State conceded the defendant had not participated or been involved in the previous shooting incident, the evidence was inadmissible and a basis for reversing the defendant's conviction and remanding for a new trial. *Id*. ¶ 45.

¶ 31     We agree with the better reasoned and less circumstantial approach in *Pikes* that absent a showing, beyond a mere suspicion, that a defendant was a participant in a previous crime or bad act, evidence about that crime is inadmissible. During oral arguments, the State asserted that Lopez's presence near the factory before and after the December 4 incident permitted the trial court to draw the inference he was involved in that crime. We disagree. The requirement set out in *Thingvold* is that the State must show the defendant committed or participated in the commission of the earlier crime. *Thingvold*, 145 Ill. 2d at 452. Mere suspicion may result in a defendant being subjected to peril for something that he had nothing to do with or knew anything about. Here that standard was not met, as the State presented no evidence that Lopez participated in the December 4 attack.

¶ 32     The State further suggested during oral arguments that if Lopez was not involved in the December 4 incident, he is not harmed by its admission into evidence and, therefore, this court should not reverse on that basis. As noted above, the problem with admitting other-crimes evidence is that it may overpersuade the jury that a defendant is a bad person who deserves punishment. Here, there is a strong possibility that the testimony regarding the December 4 incident, along with the State's introduction of testimony regarding Lopez's membership in a gang, could have persuaded the jury that Lopez was a bad person who should be punished. Because the State failed to show beyond a mere suspicion that Lopez was involved in the December 4 incident, the trial court erred in permitting the State to present that evidence. Therefore, we reverse Lopez's conviction and remand for a new trial.

¶ 33                                III. CONCLUSION

¶ 34     For the reasons set forth above, we reverse Lopez's conviction and remand his cause for a new trial, as provided in this decision.

¶ 35     Reversed and remanded for new trial.