# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *People v. Lopez*, 2014 IL App (1st) 102938-B

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS LOPEZ, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-2938 |
| Filed | June 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In response to a supervisory order of the Illinois Supreme Court directing the appellate court to reconsider its earlier decision reversing defendant's conviction for a murder involving several codefendants in light of the supreme court's decision in *Pikes*, holding that the admission of evidence regarding a collateral crime defendant was not involved in should be judged under ordinary relevancy principles, rather than a traditional other-crimes analysis, the appellate court upheld its earlier decision reversing defendant's murder conviction and remanding the case for a new trial on the ground the trial court erred in admitting evidence of an attack by some of the codefendants, but not defendant, three weeks prior to the attack that defendant took part in with the other codefendants that resulted in the victim's death, since there was no evidence defendant was present at the first attack or even knew of it, or that the fatal attack was in retaliation for or related to it in any way. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-03180; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal     Michael J. Pelletier, Alan D. Goldberg, and Emily S. Wood, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

Panel     JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Pierce and Mason concurred in the judgment and opinion.

## OPINION

¶ 1     Fifteen years old at the time of his arrest, defendant Carlos Lopez was convicted by a jury of murder for his participation, along with several codefendants, in the beating death of a factory employee in the parking lot where the victim worked. The trial court sentenced Lopez to 22 years in prison. Lopez appealed, raising several errors at trial as grounds for reversing his conviction, including the admission of evidence about an attack on a man by some of Lopez's codefendants in the same parking lot about three weeks earlier. Lopez argued that because he did not participate in the earlier crime, the State failed to meet the threshold requirement for admissibility under traditional "other crimes" analysis. We agreed, reversed Lopez's conviction, and remanded for a new trial. *People v. Lopez*, 2013 IL App (1st) 102938. Our supreme court then entered a supervisory order directing this court to vacate our judgment and reconsider our opinion in light of *People v. Pikes*, 2013 IL 115171. *People v. Lopez*, No. 116212 (Jan. 29, 2014) (supervisory order). As directed, we vacate our prior opinion and have reconsidered the case after carefully reviewing *Pikes* and supplemental briefs from the parties. We continue to hold that the trial court erred in allowing the evidence of the earlier, unrelated attack, and reverse and remand for a new trial.

¶ 2                                       BACKGROUND

¶ 3     In the early hours of December 24, 2007, Francisco Reyes was beaten and killed by a group of men in the parking lot of a tortilla factory in Chicago. Carlos Lopez and five other men, Daniel Roman, Martin Roman, Ismael Morales, Omar Morales, and Adolfo Zuniga, who lived in the neighborhood, were later arrested and charged with three counts of murder and one count of robbery. The State later dropped the robbery charge against Lopez. Before trial, defense counsel filed a motion *in limine*, to exclude evidence regarding an incident on December 4, 2007, when three of Lopez's codefendants beat a man in the factory parking lot and smashed car windows. The defense also sought to exclude evidence of Lopez's gang membership. The trial court denied both requests, finding the evidence more probative than prejudicial.

¶ 4    Lopez, only 15 years old at the time of his arrest, was tried separately from his codefendants. The State's evidence at trial consisted primarily of the testimony of two eyewitnesses, Sylvia Ortiz and Fernando Garcia, who saw the murder occur. Ortiz and Garcia lived with their son in the second floor of an apartment building across the street from the tortilla factory. They said they watched the crime from separate windows of their apartment, which faced the parking lot.

¶ 5    Under the State's theory of the case, events leading up to the murder began in the early morning hours of December 4, 2007. Sylvia Ortiz testified that after arriving home from work around 1 a.m., she heard a banging noise outside. She looked out her window and saw three men hitting the factory door with baseball bats. Ortiz recognized all three men, Daniel Roman, Martin Roman, and Ismael Morales, because she frequently observed them hanging around the neighborhood. When no one opened the factory door, she saw the men break car windows in the parking lot. Ortiz called the police, who arrived about 15 minutes later.

¶ 6    One of the factory employees, Pedro Martinez, testified he arrived at work on the evening of December 3 and saw a group of young men, including Lopez, hanging out on the corner near the factory. Later that evening, a man whom Martinez had not seen before, came to the factory to sell a car jack. The man said a friend was waiting outside. A few minutes later, the friend came into the factory. He had been beaten up and his face was bleeding. Loud banging on the factory door could be heard, and the two men stayed in the factory until the banging stopped. Martinez went outside and saw that his car windows were broken and another car was damaged. Martinez saw the same crowd of five or six young men, including Lopez, standing on the corner. He testified that he frequently saw these men near the factory when he arrived at and left work.

¶ 7    About three weeks later, on December 24, Ortiz and Garcia were home around midnight when they heard a voice outside. They both recognized the person speaking as Daniel Roman, who was talking on a cell phone. Ortiz said that Daniel told the person on the phone to come over and made a waving motion with his hand. Garcia heard Daniel say "come help me, I need to fuck him up, come help me, from the factory, let's fuck him up." Soon after, Lopez, Ismael Morales, Omar Morales, and Martin Roman arrived. After the men gathered, Garcia heard someone say "Let's get him; let's fuck him up." The group walked to the factory parking lot where Francisco Reyes was driving a forklift. Juan Ramirez, one of Reyes's coworkers, testified that a supervisor had sent Reyes out to the parking lot shortly before the murder to unload a shipment of corn. The group grabbed Reyes off the seat of the forklift, forced him to the ground, and began hitting and kicking him. At some point, Adolfo Zuniga arrived in a car and joined the others in beating Reyes. As Reyes lay on the ground, one of the men removed Reyes's wallet from his pocket. Then one of the perpetrators went across the street and picked up a concrete rock. Garcia testified Ismael Morales dropped the rock on Reyes's head and then Lopez dropped the rock on him a second time. Ortiz also testified that a rock was dropped on Reyes's head, but did not identify who dropped it. After striking Reyes with the rock, the men scattered.

¶ 8    Inside the factory, a supervisor asked Juan Ramirez to check on Reyes because he had not returned from unloading the corn. Ramirez found Reyes lying on his back in the parking lot and ran back into the factory to call 911. Reyes was taken to a hospital. He died the next day. The medical examiner testified that Reyes died of multiple cranial injuries caused by blunt force trauma.

¶ 9 Detectives Roberto Garcia and Peter Maderer investigated the murder. On December 27, Fernando Garcia went to the police station and told Detective Garcia what he saw the night of the murder. He testified he did not come forward earlier because he feared retribution, particularly because the uncle of some of the perpetrators lived in the apartment below his. Garcia identified photos of Lopez, Omar Morales, Ismael Morales, Daniel Roman, Martin Roman, and Adolfo Zuniga as the perpetrators. Initially, Garcia identified Carlos Lopez's brother as being Carlos, but later identified Carlos as one of the perpetrators. Garcia also viewed three in-person lineups. At the first, he identified Ismael Morales, Daniel Roman, Martin Roman, and Adolfo Zuniga as the perpetrators. At the second, he identified Omar Morales. At the third, he identified Lopez. At trial, Garcia made an in-court identification of Lopez as one of the men who beat Reyes.

¶ 10 On January 1, 2008, Sylvia Ortiz spoke to Detective Garcia at the police station about the December 24 murder. She too testified she did not come forward sooner because she was afraid. The police showed Ortiz photos. She identified Ismael Morales, Daniel Roman, and Martin Roman as three of the perpetrators. Ortiz later viewed three in-person lineups. At the first, she identified Ismael Morales, Daniel Roman, and Martin Roman. At the second lineup, she identified Omar Morales. At the third lineup, she identified Lopez. She also identified him in court.

¶ 11 During the trial, Fernando Garcia testified he believed Lopez and his codefendants were members of a street gang, the Latin Kings, because he frequently saw them making gang signs and throwing rocks at the cars of rival gang members. During Garcia's testimony, the trial court instructed the jury as follows:

"This evidence is not to be considered by you–he is not accused of being in a gang. That's not what he's on trial for, but this evidence is given as it may indicate the witness's basis of his identification. This is how he claims to know who the people are that he is suggesting are involved in this matter. It is for the basis of identification and possible motive."

¶ 12 Lopez did not testify or present any witnesses during the trial. Following closing, the jury deliberated and found Lopez guilty of first degree murder. In his motion for a new trial, Lopez argued, in part, that the State made prejudicial, inflammatory, and erroneous statements in its closing argument and the trial court erred by admitting evidence about the December 4 incident and Lopez's gang membership. The trial court denied the motion and sentenced Lopez to 22 years in prison.

¶ 13 Lopez raised four issues on appeal, two involving errors by the trial court, two involving errors by defense counsel and the prosecutor. The first error dealt with the trial court's admission of other-crimes evidence against Lopez, namely, the attack in the tortilla factory parking lot on December 4, about three weeks before Reyes's murder. The other errors involved the State's introduction of evidence of gang membership; the effectiveness of defense counsel in presenting a theory in opening statements that she did not support with evidence at trial; and the State's remarks during closing argument about Lopez, the victim, and the State's witnesses. Because we agreed with Lopez's first contention, that the trial court erred in admitting other-crimes evidence against him during trial required reversal and remand, we addressed the first issue only and did not address the remaining three issues.

¶ 14 In our opinion, we found that because the State presented no evidence Lopez was involved in the December 4 parking lot incident, the evidence was inadmissible under

traditional other-crimes analysis. *Lopez*, 2013 IL App (1st) 102938, ¶ 19. We also rejected the State's contention the evidence was admissible even if Lopez was not involved in the prior crime because it was relevant to establish the motive for the subsequent murder. For support, the State cited *People v. Morales*, 2012 IL App (1st) 101911, which involved one of Lopez's codefendants and held that even if Morales was not present, evidence about the December 4 incident was admissible if relevant to show a motive for the later Reyes murder. *Morales*, 2012 IL App (1st) 101911, ¶ 32. Noting an apparent split of opinion in the appellate court, we found *People v. Pikes*, 2012 IL App (1st) 102274, to be the better-reasoned approach.

¶ 15    In *Pikes*, the defendant was charged with first degree murder for a drive-by shooting at a group of rival gang members that killed one man. Before trial, the State made a motion to introduce evidence against both Pikes and his codefendant of an earlier shooting committed by the codefendant. *Pikes*, 2012 IL App (1st) 102274, ¶ 4. As described in that motion, in the days before the drive-by shooting, a member of the Gangster Disciples street gang was riding a motor scooter when codefendant, a member of the Four Corner Hustlers street gang, shot at him. *Id.* Immediately afterward, a car driving behind the scooter struck the codefendant. Pikes argued that codefendant's shooting at the scooter should not be admitted as to him, because he was not present when it occurred. *Id.* While acknowledging that it was " 'unaware of any evidence that [defendant] was present at the time of the shooting,' " the State argued that this incident was relevant and admissible against both defendant and codefendant to show motive for the murder. *Id.* The trial court agreed with the State and admitted the evidence, finding that it was "extremely relevant[,] by far more probative than prejudicial," and "[w]ill help the jury understand the context" of the instant cause. (Internal quotation marks omitted.) *Id.* At trial, the State presented the statement of a witness who said he talked to Pikes and his codefendant just before the drive-by shooting and heard the codefendant say they were going to kill a Gangster Disciple in retaliation for the scooter incident. A jury convicted Pikes of first degree murder. *Id.* ¶ 17.

¶ 16    In appealing his conviction, Pikes argued, in part, that the trial court erred in admitting evidence of the scooter shooting against him because he was neither present nor involved in that other crime and that because the evidence was highly prejudicial, reversal was required. *Pikes*, 2012 IL App (1st) 102274, ¶ 23. The *Pikes* court held that because the State admitted it had no evidence Pikes was even present at the scooter shooting, let alone a participant, it failed to meet the threshold requirement for admission of other-crimes evidence, defendant's involvement beyond a mere suspicion. *Pikes*, 2012 IL App (1st) 102274, ¶ 27.

¶ 17    The court also rejected the State's argument that *Morales* supported a finding that the evidence of the scooter shooting was admissible because it was relevant evidence of defendant's motivation in the victim's murder. *Pikes*, 2012 IL App (1st) 102274, ¶ 29. The court found *Morales* was factually distinguishable and carved out a "tenuous" exception to the rule regarding other-crimes evidence. *Id.* ¶ 36. While the court acknowledged that under *People v. Manuel*, 294 Ill. App. 3d 113 (1997) and *People v. Rutledge*, 409 Ill. App. 3d 22 (2011), prior intrinsic incidents could be admitted under simple relevancy principles rather than requiring the higher threshold of proof for other-crimes evidence, the court asserted, "what is dangerous about *Morales* is that it attempts to expand these holdings to cases where it is unclear whether the defendant participated in the prior acts." *Pikes*, 2012 IL App (1st) 102274, ¶ 42. Where "there was no question that the defendants committed the prior acts

- 5 -

sought to be introduced," the court said, "[w]e have no problem *** with the lower relevancy threshold." *Id.* ¶ 41. But the court found it could not follow *Morales* to find other-crimes evidence admissible where the State failed to show beyond a mere suspicion that defendant was involved or participated in that crime. *Id*. ¶ 42. The *Pikes* court noted that although the *Morales* court seemed to think such a distinction was irrelevant, "it still went out of its way several times to highlight the eyewitness testimony regarding the defendant's presence at the prior attack." *Id*. The court found that where the State conceded the defendant had not participated or been involved in the previous shooting incident, the evidence was inadmissible and a basis for reversing the defendant's conviction and remanding for a new trial. *Id*. ¶ 45.

¶ 18    In agreeing with the approach in *Pikes*, we found "that absent a showing, beyond a mere suspicion, that a defendant was a participant in a previous crime or bad act, evidence about that crime is inadmissible." *Lopez*, 2013 IL App (1st) 102938, ¶ 31. We also disagreed with the State's assertion during oral arguments that Lopez's presence near the factory before and after the December 4 incident permitted the trial court to draw the inference he was involved in that crime. "Mere suspicion may result in a defendant being subjected to peril for something that he had nothing to do with or knew anything about." *Id.*

¶ 19    After we issued our opinion, the Illinois Supreme Court reversed the appellate court's decision in *Pikes*. *People v. Pikes*, 2013 IL 115171. The court held the admissibility of evidence regarding a collateral crime a defendant was *not* involved in should be judged under ordinary relevancy principles rather than traditional other-crimes analysis. *Id*. ¶ 20. The court found that because the evidence at trial, including the testimony of several witnesses, amply demonstrated Pikes was "motivated to assist [codefendant] in retaliating against the Gangster Disciples for the injury caused to [codefendant] during the scooter shooting incident" it was relevant to show the motive for the drive-by shooting. *Id*. ¶ 22.

¶ 20    While *Pikes* was pending, the State filed a petition for leave to appeal to the Illinois Supreme Court in this case. The supreme court denied the petition but entered a supervisory order directing this court to vacate its decision and reconsider in light of *Pikes* "to determine if a another outcome is warranted." *People v. Lopez*, No. 116212 (Jan. 29, 2014) (supervisory order).

¶ 21                                    ANALYSIS

¶ 22    As noted, *Pikes* provides that in cases such as this one, where the State seeks to introduce evidence of a prior crime in which the defendant was not a participant, admissibility should be judged under ordinary principles of relevance. *Pikes*, 2013 IL 115171, ¶ 20. " 'Relevant evidence' is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011)." *Id*. ¶ 21. Even relevant evidence, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011). The admissibility of evidence rests within the discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 23    In *Pikes*, the court found the prior scooter incident was relevant because witnesses testified they heard Pikes and his codefendant say they were going to kill a Gangster Disciple in retaliation for the earlier incident. *Pikes*, 2013 IL 115171, ¶ 22. Thus, the evidence of the

prior crime, even though Pikes was not present when it occurred, was relevant to establish the motive of the later drive-by shooting. *Id*. ¶ 26.

¶ 24    Here, a completely different situation is presented. The State presented no evidence at trial showing the Reyes murder was tied to the prior incident outside the factory. In its supplemental brief, the State contends evidence showing that Lopez's codefendants beat up a man outside the factory on December 4, banged on the factory doors, and smashed car windows showed their animosity toward the people in the factory and was relevant to show the motive for the otherwise inexplicable attack on Francisco Reyes three weeks later. While it is possible that revenge was a motive, *absent any evidence*, the State's assertion rests on pure conjecture. In *Pikes*, witnesses testified that Pikes and his codefendant were heard stating they wanted to kill a Gangster Disciple as revenge for the scooter shooting incident, in which Pikes's codefendant was hit by a car. Here, there was no evidence showing a connection between to the two incidents. Although some of Lopez's codefendants were involved in both crimes, the State did not present testimony or evidence showing the second crime was in retaliation for the first or that they were otherwise related. Furthermore, there was no evidence offered even showing Lopez knew about the earlier incident.

¶ 25    The key issue for the jury's determination was whether the evidence presented by the State, including the testimony of two eyewitnesses to the incident, proved beyond a reasonable doubt that Lopez was one of the perpetrators in the beating death of Reyes. Evidence about an unrelated incident that occurred nearly a month earlier offered no probative value for the jury in making that decision. Motive, although not a necessary element to the crime, is relevant. For instance, the State presented testimony that Reyes's wallet was taken by the perpetrators, which is evidence that robbery may have been a motive. And in *Pikes*, the earlier scooter incident could be presented as evidence of a motive where Pikes and his codefendant were heard saying they were going to kill a member of the rival gang as retribution. But here, the State did not argue or present evidence other than the earlier incident to establish revenge as a motive.

¶ 26    The State contends the holding in *Morales*, 2012 IL App (1st) 101911, supports a finding that evidence about the December 4 incident was relevant circumstantial evidence showing motive and intent. As noted, *Morales* was an appeal by one of Lopez's codefendants following his conviction for the murder and robbery of Reyes. Like Lopez, Morales argued the December 4 attack should not be admitted into evidence because there was insufficient proof he was involved in that incident. In *Morales*, unlike here, one witness, Fernando Garcia, testified Morales was present in the factory parking lot during the December 4 incident. *Morales*, 2012 IL App (1st) 101911, ¶ 4. Garcia wavered on cross-examination, however, stating he was not certain Morales was present that night. *Id*. The appellate court found "Garcia's testimony was sufficient to put the defendant's participation in the December 4 incident before the jury." *Id*. ¶ 32. Therefore, the threshold requirement for other-crimes evidence, defendant's participation in the prior crime, was established. Relying on *Manuel* and *Rutledge*, the *Morales* court then reasoned that if the evidence sought to be admitted could be considered "part of the 'course of conduct' leading up to the crime charged, then it constitutes intrinsic evidence of the charged offense and its admissibility is not analyzed as 'other crimes' evidence, requiring proof that the defendant committed or participated in the uncharged offense." *Id*. ¶ 25 (citing *Manuel*, 294 Ill. App. 3d at 124). Instead, the evidence is admissible under the more general, and lower threshold, principles of

ordinary relevance. *Morales*, 2012 IL App (1st) 101911, ¶ 24. Based on this reasoning, the *Morales* court found the evidence of the earlier factory attack properly admitted against the defendant as intrinsic to the subsequent murder by providing a context for that crime. See *id.* ¶¶ 30-32.

¶ 27 The *Morales* court, however, went further and held the evidence would have been admissible whether or not defendant was present or participated in the previous incident. *Morales*, 2012 IL App (1st) 101911, ¶ 32. The court stated "[n]o such showing was required because the contested evidence was not 'extrinsic' to the murder and robbery charges against the defendant." *Id.* The showing that some of the same individuals were involved in the December 4 and the December 24 incidents was sufficient for admission of the contested evidence. "Relevancy was key and that was shown by the involvement of some of the same individuals on December 4 that participated in the murder; that showing was sufficient for the admission of the contested evidence. In other words, even if the evidence of the December 4 incident established that the defendant was not present, the jury was free to infer, based on the evidence before it, that the defendant took part in the murder and robbery to help his friends avenge their vendetta against the employees of the tortilla factory." *Id.*

¶ 28 *Morales* is distinguishable in that evidence was presented showing the defendant may have participated in the earlier crime. Although Garcia's testimony identifying Morales as present on the date of the December 4 incident may have been undermined on cross-examination (a proposition the appellate court found was unsupported by the evidence), it presented a question of fact for the jury. Morales's possible participation in the December 4 incident made evidence of that incident relevant to showing motive.

¶ 29 But how could Lopez be motivated to act by the December 4 incident without a whit of evidence establishing he participated in or even had any knowledge of it? Whether his codefendants may have been motivated by the December 4 incident does not permit an inference as to Lopez's motivation when the testimony regarding the incident has no connection to Lopez and, thus, does not have a tendency to make his participation in the December 24 murder more or less probable than it would be without the evidence.

¶ 30 The problem with admitting evidence about other crimes or bad acts is that it may overpersuade the jury that a defendant is a bad person who deserves punishment. That possibility is particularly strong here because the testimony regarding the December 4 incident, along with the State's introduction of testimony regarding Lopez's membership in a gang could have persuaded the jury that Lopez was a bad person who should be punished. The trial court erred in permitting the State to present the evidence where the State failed to show the relevance of the December 4 incident to the crime Lopez was accused of. As such, the evidence did not make his involvement in the murder more or less likely. Therefore, we reverse Lopez's conviction and remand for a new trial.

¶ 31                                                    CONCLUSION
¶ 32 For the reasons set forth above, we reverse Lopez's conviction and remand his cause for a new trial, as provided in this decision.

¶ 33 Reversed and remanded.

- 8 -